Steven J. German - State Bar No. 014789
Scott B. Seymann – State Bar No. 027215
**ADELMAN GERMAN, P.LC.**
8245 North 85th Way
Scottsdale, Arizona 85258
Telephone (480) 607-9166
Facsimile (480) 607-9031
steve@adelmangerman.com

*Additional Attorneys for Plaintiff
Appear on Signature Line*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TROY BARRERA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PRIME ACCEPTANCE CORP., a Utah corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Troy Barrera ("Barrera" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Prime Acceptance Corp. ("PAC" or "Defendant") to stop its practice of sending text messages to consumers nationwide who specifically asked PAC to "STOP" sending such messages and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Barrera is a natural person domiciled in the State of Arizona and is the exclusive user of a cell phone number ending in 2731.

2. Defendant PAC is a corporation incorporated and existing under the laws of the State of Utah that makes automobile and other loans to consumers nationwide and in this District.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this action in accordance with 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") a federal statute. Jurisdiction is also proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.* because the classes each consist of over 100 people, at least one member of each class is from a State other than Utah (the state of Defendants), and the amount in controversy, when aggregated, is over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

4. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is registered to do business in the State of Arizona, regularly conducts business in the State of Arizona and in this District, and a substantial part of the events giving rise to the claims asserted here occurred in this District. Plaintiff received the messages while in this District.

## COMMON ALLEGATIONS OF FACT

**A.  Bulk SMS Marketing**

5. In recent years, companies who have felt stymied by federal laws limiting communication by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply and to be received by consumers instantly.

6. Bulk text messaging has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to

160 characters.

7. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device and is a call under the TCPA.

8. When an SMS message call is successfully made, the recipient's cell phone alerts him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.   Defendant Systematically Transmits Text Messages to Consumers Who Have Opted Out of Receiving Such Text Messages**

9. To facilitate its collection efforts, PAC uses software from www.eztexting.com to send text messages to its customers about their bills. While this technology may be beneficial for PAC as it allows PAC to communicate with its customers on a number of platforms, some consumers, like Plaintiff, find such communications to be annoying and invasive.

10. Unfortunately for consumers like Plaintiff, it is nearly impossible to opt out of PAC's text messaging. That is, customers like Plaintiff who respond to PAC's text messages with the word "Stop" continue to receive such text messages even though they have plainly revoked their consent.

11. Under the TCPA, consumers must be provided a mechanism for revoking their consent to be called on their cellphones. The FCC, in a 2015 Press Release, clarified the right of consumers to revoke their consent to receive text messages as follows:

> **"Empowering Consumers to Say 'Stop' –** Consumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time."[1]

12. In sending the text messages at issue in this Complaint after its customers had responded "Stop," Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent), eztexting.com, has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

13. On information and belief, PAC has sent such text messages to numerous other individuals who have responded "STOP" to no avail.

### C.   Plaintiff's Experience with PAC

14. Within the last three years, Plaintiff obtained an automobile loan from the Defendant.

15. Shortly after obtaining the loan, Plaintiff began receiving text messages from Defendant about his loan payments.

16. Plaintiff found the text messages to be harassing and annoying and repeatedly requested that Defendant "STOP" sending such messages, yet Defendant ignored such requests.

17. For example, on March 29, 2016, Plaintiff received a text message from Defendant that stated:

> Troy Barrera, this is Rossana with Prime Acceptance. I need you to contact me immediately or I will no longer be able to work with you. I need a call today at 855-362-3117. Thank You. This may be an attempt to collect a debt; any information obtained may be used for that

---
[1] http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0619/DOC-333993A1.pdf

purpose.

(See "Text Messages," true and accurate copies of which are attached hereto as Group Ex. A.)

18. Plaintiff responded "STOP" the next day (March 30, 2016) and even received a message minutes later confirming that "You have discontinued from EzTexting alerts. You will no longer receive messages from this service. Questions www.eztexting.com." (*See* Group Ex. A.)

19. Nevertheless, the following day (March 31, 2016), Plaintiff received another message from PAC that stated:

> Troy Barrera, It is very important that you return my call today, in regards to the personal business you have with Prime Acceptance. There are decisions pending, if you want to be part of those decisions you must contact me immediately at 855-362-3117. Thank you. This may be an attempt to collect a debt; any information obtained may be used for that purpose.

(*See* Group Ex. A.)

20. The same thing happened again on April 8, 2016, when PAC sent Plaintiff a message stating:

> Hello Troy this is Carmela with Prime Acceptance. You have arrangements with us today. Please contact me at 855-362-3117. Thank you. This may be an attempt to collect a debt; any information obtained may be used for that purpose.

(*See* Group Ex. A.) Plaintiff responded "STOP" 3 minutes later. (*See* Group Ex. A.)

21. Despite this STOP request, on April 12, 2016 Plaintiff received the following text message from Defendant (that appeared to be a near "cut and paste" of the March 29, 2016 text message, with the name changed from Rossana to Carmela):

> Hello Troy This is Carmela with Prime Acceptance. I need you to contact me immediately or I will no longer be able to work with you. I need a call today at 855-362-3117. Thank You. This may be an attempt to collect a debt; any information obtained may be used for that purpose.

(*See* Group Ex. A.)

22. Plaintiff continues to receive text messages from Defendant despite his requests that the messages STOP and notwithstanding Defendant's own message confirming that Plaintiff would no longer receive such text messages.

23. Accordingly, Defendant PAC failed to honor Plaintiff's STOP requests. To the extent any prior express consent was ever provided for Defendant to send text messages, such consent was revoked when Plaintiff responded, "STOP."

24. By making unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited text messages since Defendant systematically fails to properly process consumers' opt-out requests. Such messages interfere with consumers' ability to fully use and enjoy the hardware and software components of their cellphones and otherwise cause harm, including the costs of receiving such messages and the reduction in the number of allotted texts permitted under each consumer's respective cellphone plan. Such text messages also cause wear and tear on the phone and the battery.

25. In order to redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

26. On behalf of the Class, Plaintiff also seeks an injunction requiring Defendant to cease all wireless spam activities and to honor opt out requests together with an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

### CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action in accordance with Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class defined as follows:

>All Persons in the United States or its territories who at any point from June 8, 2012: (a) received at least one text message on his or her cellular telephone from PAC; (b) responded to the text message with the response STOP or its equivalent; and (c) received at least one additional text message from PAC apart from a message confirming the Person's STOP request.

The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

28. Membership in the class is completely objective and can be readily ascertained through Defendant and eztexting.com's records, including data stored within and/or related to their messaging equipment and data stored on their servers. Class member phone records could also be used secondarily to verify class membership.

29. On information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

30. There are several questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

  (a) whether Defendant's conduct constitutes a violation of the TCPA;

  (b) whether Defendant continued to send text messages to cell phones after the users of those phones responded for the messages to "STOP";

  (c) whether Defendant failed to provide a cost-free means of opting-out;

  (d) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Class;

  (e) whether Plaintiff and the Class revoked their consent by replying STOP to Defendant's text messages;

  (f) whether Plaintiff and the Class members are entitled to statutory damages; and

  (g) whether Defendant's conduct was willful.

31. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, and wear and tear on the hardware and battery, as a result of the transmission of the wireless messages alleged herein. Plaintiff and the other members of the Class have all suffered substantially similar harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Class, received unsolicited text message calls from Defendant after responding STOP. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Class.

32. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interest antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff received the Defendant's text messages after replying, "STOP." Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and TCPA class actions specifically. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

33. The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief. Injunctive relief is necessary and appropriate to require Defendant to discontinue sending unsolicited and unauthorized spam text messages to consumers that have expressly responded STOP. Likewise, Defendant has acted and/or failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the text messages at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

34. In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal

litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendant after responding "STOP" (or with a comparable message). The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

36.     Adequate notice can be given to the members of the Class directly using information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227 *et seq.*)**

37.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

38.     Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such

numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

39. These text calls were made *en masse* and without the consent of the Plaintiff and the other members of the Class to receive such messages. Indeed, any consent that such consumers had ever provided had been expressly revoked by everyone since each responded "STOP" to the text messages.

40. The messages themselves appear to be form messages, as opposed to messages typed out individually by hand.

41. The text messages to Plaintiff and the class were made after any consent had been expressly revoked by responding, "STOP" or its equivalent(s). This alone violates the TCPA.

42. Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

43. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

44. Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendant were to claim that is has temporarily placed such messages on hold.

**WHEREFORE**, Plaintiff Troy Barrera, on behalf of himself and the class, prays for the following relief:

A. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Barrera as the representative of the Class and

appointing his attorneys' as Class Counsel;

B. An award of actual and statutory damages under the TCPA, to be trebled in the event the Court finds Defendant acted knowingly;

C. An injunction requiring Defendant to honor STOP requests, and otherwise protecting the interests of the Class;

D. An award of reasonable attorneys' fees and costs; and

E. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 16th day of June 2016.

Respectfully Submitted,

**TROY BARRERA**, individually and on behalf of all others similarly situated,

By: ____/s/ *Steven J. German*
       One of Plaintiff's Attorneys

**ADELMAN GERMAN, P.L.C.**
Steven J. German - State Bar No. 014789
Scott B. Seymann – State Bar No. 027215
8245 North 85th Way
Scottsdale, Arizona 85258

Steven Woodrow*
Woodrow & Peluso, LLC
Patrick H. Peluso*
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com
           ppeluso@woodrowpeluso.com

*Motion for admission *pro hac vice* to be filed

*Attorneys for Plaintiff*